# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKAL JONES and ANGELA ANDERSON | Case No.  1:17-cv-1260-SKO |
| Plaintiffs, | **ORDER RE MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| | (Doc. 16) |
| COUNTY OF TULARE, CALIFORNIA, et al., | |
| Defendants. | |

## I.    INTRODUCTION

On October 15, 2018, Defendants County of Tulare, Tulare County Sheriff Michael Boudreaux, and Tulare County Deputy Sheriff Michael Torres (collectively, "Defendants") filed a motion for summary judgment or, in the alternative, partial summary judgment.  (Doc. 16.)  After denial of their motion to amend the complaint (Doc. 24), Plaintiffs Mikal Jones ("Plaintiff Jones") and Angela Anderson (collectively, "Plaintiffs") filed an opposition brief on February 20, 2019 (Doc. 27), and Defendants filed a reply brief on February 26, 2019 (Doc. 28).

The adjudication of the present motion was stayed pending resolution of the state court case *Dilday v. Jones.*, which was finalized on May 1, 2023, when the United States Supreme Court denied Plaintiffs' petition for certiorari (*see* Docs. 30, 50, 57).  *See Dilday v. Jones*, No. F077682, 2022 WL 108617, at *1, 6 (Cal. Ct. App. Jan. 12, 2022), *review denied* (Apr. 20, 2022), *cert. denied sub nom. Bi Rite Auto Transp. v. Dilday*, No. 22-752, 2023 WL 3158368 (U.S. May 1, 2023).  The matter was thereafter taken under submission on May 19, 2023.  (Doc. 58.)

For the reasons set forth below, Defendants' motion for summary judgment or, alternatively for partial summary judgment, will be granted in part and denied in part.

## II. BACKGROUND

**A.    Summary of Relevant Evidence[1]**

    1.    <u>Prior State Court Litigation</u>

Pursuant to a state court judgment entered in 2013 (the "2013 Judgment") (Doc. 16-6 at 9–14; Doc. 27-1 at 10–15)[2], non-party Pleasant Valley Canal Company ("PVCC") holds an irrevocable license granting conditional access to enter property owned by Plaintiffs to fulfill PVCC's duty to maintain, service, and repair the Pleasant Valley Canal (the "Canal"), which provides water to some of the neighboring farms. (Doc. 16-3 at 2. *See also* Doc. 16-6 at 9–14; Doc. 27-1 at 10–15.) Subject to several express conditions, PVCC is permitted to access the property at all reasonable times, without advance notice, for ordinary operations and emergency repairs. (*Id*.) The 2013 Judgment provides that PVCC may access Plaintiffs' property at the following locations:

    a.    At the gate along the easterly boundary of [Plaintiffs'] real property to the north and east of where the Canal enters [Plaintiffs'] real property ("Gate A");

    b.    At the gate at the north westerly portion of [Plaintiffs'] real property where the Canal exits [Plaintiffs'] real property ("Gate B");

    c.    At the gate in the southeasterly portion of [Plaintiffs'] real property approximately

---

[1] The evidence adduced by the parties in conjunction with this motion comprises: (i) Defendant Tulare County Deputy Sheriff Michael Torres' declaration and its attached Tulare County Sheriff's Incident Report (Doc. 16-5); (ii) declaration of Richard Van Waller, Water Master for Pleasant Valley Canal Company ("PVCC"), and its attached "Incident Report" (Doc. 16-6 at 1–7); (iii) *Dilday v. Bi-Rite Auto Transport, Inc.,* No. 09-232667, Judgment (Sup. Ct. Tulare Cty. June 18, 2013) (the "2013 Judgment") (Doc. 16-6 at 9–14; Doc. 27-1 at 10–15); (iv) *Dilday v. Jones*, No. PCU261738, Proposed Tentative Decision and Statement of Decision After Court Trial (Sup. Ct. Tulare Cty. Oct. 18, 2017) (the "Tentative Decision") (Doc. 16-6 at 16–46); (v) *Dilday v. Jones*, No. PCU261738, Ruling on Defendants' Objections to Proposed Tentative Decision and Statement of Decision and Motion to Reconsider (Sup. Ct. Tulare Cty. May 10, 2018) (Doc. 16-6 at 48–54); (vi) *People v. Jones*, No. VCM322004, Terms of Probation (Sup. Ct. Tulare Cty. May 1, 2018) (Doc. 16-6 at 56–58); (vii) Plaintiff Mikal Jones' declaration in opposition to Defendants' motion for summary judgment (Doc. 27-1 at 1–8); and (viii) a joint statement of undisputed material facts (Doc. 16-3). In addition, Defendants refer to certain allegations in the Complaint. (Doc. 16-2 at 2.) The summary of relevant evidence is distilled from these sources.

[2] A court 'may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *United States ex rel. v. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). *See also* Fed. R. Evid. 201.

|   |   |
|---|---|
| 1 | 400 feet north of Avenue 176 ("Gate C");and |
| 2 | d.   At what is commonly referred to as the Switzer gate along the westerly boundary of |
| 3 | [Plaintiffs'] real property ("Gate D"). |

(*See* Doc. 16-6 at 10; Doc. 27-1 at 11.)

In 2015, Plaintiffs filed a cross-complaint in *Dilday v. Jones*, No. PCU261738, in Tulare County Superior Court. (Doc. 16-3 at 2.) The cross-complaint impleaded PVCC as a cross-defendant and alleged that PVCC violated the conditions of its irrevocable license as set forth in the 2013 Judgment and trespassed on the property that is the subject of the license. (*Id*.) The case was tried to the court from October 26, 2016, to May 18, 2017. (*Id*.)

On October 18, 2017, the court issued its "Proposed Tentative Decision and Statement of Decision After Court Trial" (the "Tentative Decision"), finding in favor of PVCC on Plaintiffs' cause of action for trespass. (Doc. 16-6 at 16–46. *See also* Doc. 16-3 at 2.) On February 26, 2018, the court entered final judgment.[3]

2.   Present Lawsuit

The incident giving rise to the instant litigation occurred on May 13, 2017, five days before trial in *Dilday v. Jones* concluded. (Doc. 16-3 at 3.) That morning, Defendant Tulare County Deputy Sheriff Michael Torres ("Deputy Torres") was dispatched for a "Keep the Peace" call in the 32000 block of Avenue 176 in Springville. (*Id*.) Plaintiffs' neighbor, Russell Dilday, had called because he wanted a sheriff dispatched to keep the peace while he contacted his neighbor, Plaintiff Jones, regarding access to the property to fix a water flow problem. (*Id*. at 3–4. *See also* Doc. 16-5 at 6–9.) As a sworn peace officer for the Sheriff's Department, Deputy Torres has "a statutory duty to enforce the laws of the state and maintain public order and safety pursuant to Government Code sections 26600 and 26602." (Doc. 16-3 at 4.) Tulare County Sheriff's Deputies

---

[3] Following entry of final judgment, on May 10, 2018, the court ruled on Plaintiffs' objections to the Tentative Decision ("Ruling on Objections"). (*See* Doc. 16-6 at 48–54.) Plaintiffs filed an appeal on May 24, 2018, contending that the Ruling on Objections "reset" the time for filing an appeal from February 26, 2018, such that the appeal was timely. The Court of Appeal, Fifth Appellate District, rejected Plaintiffs' argument and dismissed the appeal as untimely, holding that "the final judgment filed on February 26, 2018, was not revoked, vacated or suspended and, therefore, that it remained in effect from the date it was filed." *Dilday v. Jones*, No. F077682, 2022 WL 108617, at *1, 6 (Cal. Ct. App. Jan. 12, 2022), *review denied* (Apr. 20, 2022), *cert. denied sub nom. Bi Rite Auto Transp. v. Dilday*, No. 22-752, 2023 WL 3158368 (U.S. May 1, 2023).

have been dispatched to Plaintiffs' property on several occasions to keep the peace for issues relating to Jones and the neighbors in that area. (Doc. 27-2 at 3.)

Deputy Torres arrived at the property and met with Mr. Dilday, who advised Deputy Torres that he and Plaintiff Jones had been having an ongoing legal dispute about access to the Canal. (Doc. 16-3 at 4.) The Canal feeds water to Mr. Dilday's property from a "cement covert pipe" located on Plaintiffs' property and 100 yards east of Mr. Dilday's property. (*Id*.) Mr. Dilday advised that he had attempted to "snake out" the pipe, to no avail. (*Id*.)

About a half hour later, Richard Van Waller, the "Water Master" for PVCC, arrived.[4] (Doc. 16-3 at 4.) Mr. Van Waller advised Deputy Torres that he had had problems with Plaintiffs allowing him access to the Canal, and that he had a court ruling that stated he had been granted access to Plaintiffs' property to maintain, service, and repair the Canal. (*Id*.) Mr. Van Waller advised that he was granted access to Plaintiffs' property at various locations, including gates "A, B, C, or D." (*Id*.) Mr. Van Waller indicated to Deputy Torres that he was concerned Plaintiff Jones would cause problems, as Plaintiff Jones "had made threats to him about entering the property" and he "feared for his safety." (*Id*.)

Deputy Torres followed Mr. Van Waller in his Sheriff's vehicle to access Gate C. (Doc. 16-5 at 8; Doc. 16-6 at 3; Doc. 27-2 at 1.) The parties disagree about whether Gate C was locked or unlocked. (*See* Doc. 27-2 at 2.) According to Plaintiffs, Gate C, which was unlocked, "allowed access to the Canal by a roadway that traveled North to the Canal." (*Id*.) There also existed on the property another gate "immediately adjacent" to Gate C (the "Adjacent Gate"), which "allowed access to the Canal only by crossing pasture land that was then and there being used for husbanding horses and cattle." (*Id*.) Plaintiffs contend that it was this Adjacent Gate—and not Gate C—that had been locked with a padlock by Plaintiff Jones. (Doc. 27-1 at 5.)

Deputy Torres and Mr. Van Waller then proceeded to a so-called "cowboy gate." (Doc. 16-3 at 5.) Mr. Van Waller opened the gate and attempted to get through with his truck, but the truck "was too wide and would not be able to access through the gate without damaging the vehicle."

---

[4] The parties' Joint Statement of Undisputed Material Facts refers to the PVCC Water Master as "Richard Waller" (*see* Doc. 16-3 at 4), but the supporting declaration makes clear that the correct name is "Richard *Van* Waller" (Doc. 16-6).

(*Id.*)  Deputy Torres and Mr. Van Waller "then backed out and re-locked the gates."  (*Id.*)

At approximately noon, Deputy Torres "pulled up in front of [Plaintiffs'] residence," at which time Plaintiff Jones exited the residence and met Deputy Torres outside.  (Doc. 16-3 at 5.)  Deputy Torres advised Plaintiff Jones that "per the court order in [Deputy] Torres' possession, [Plaintiff] Jones was violating the order by locking [G]ate C and denying Richard [Van] Waller access."  (*Id.*)  Deputy Torres also informed Plaintiff Jones that Mr. Van Waller attempted to go through the "cowboy gate," but his vehicle did not fit through.  (Doc. 16-3 at 5.)

Plaintiff Jones avers that he "painstakingly" showed Deputy Torres the 2013 Judgment, and "pointed out where the Judgment expressly provided that while PVCC was able to enter the property by Gate C, its use of the Canal and access thereto must be done in a manner that has the least amount of potential harm to the property."  (Doc. 27-2 at 2; Doc. 27-1 at 6.)  Plaintiff Jones further avers that he explained to Deputy Torres he had "locked the gate to prevent potential harm to the pasture by PVCC using it as a shortcut to drive their machinery to the Canal."  (Doc. 27-2 at 2; Doc. 27-1 at 7.)  According to Plaintiffs, Deputy Torres demanded entry and threatened to "arrest and incarcerate" Plaintiff Jones.  (Doc. 27-1 at 7.)  Plaintiff Jones avers that he then gave Deputy Torres a key for the padlock to the Adjacent Gate.  (*Id.*; Doc. 27-2 at 2.)

Deputy Torres then returned to Mr. Van Waller and together they "opened the gate."  (Doc. 16-3 at 6.)  Deputy Torres followed Mr. Van Waller, who was driving a pick-up truck, onto Plaintiffs' property in his Sheriff's vehicle; they traveled at less than five miles per hour across an open dirt field to reach the location of the weir, where Mr. Van Waller completed the necessary repairs "without incident."  (*Id.*)  It took approximately 45 minutes to enter the property, reach the weir location, complete the repairs, and exit the property.  (*Id.*)

Deputy Torres exited Plaintiffs' property and secured the gate by placing the lock back in its original location.  (Doc. 16-3 at 6.)  He then returned the key to Plaintiff Jones at his residence.  (*Id.*)  According to Plaintiff Jones, Deputy Torres told him that "it was the policy of the Tulare County Sheriff Department that he could interpret the [2013 Judgment] however he saw fit and under that policy he did not need a warrant to entry the [p]roperty, or permit anyone else to enter the property."  (Doc. 27-1 at 8.)

5

**B.     Relevant Procedural History**

Plaintiffs filed their complaint in this case on September 17, 2017, against Defendants seeking damages and injunctive relief under 28 U.S.C. § 1983 ("Section 1983"). (Doc. 1.) Defendant Tulare County Sheriff Michael Boudreaux ("Sheriff Boudreaux") is sued "in his capacity as Sheriff, County of Tulare, California," while Deputy Torres is sued "[i]ndividually and in his capacity as Deputy Sheriff, County of Tulare, California." (*Id*. at 1.)

The complaint alleges three causes of action: 1) Deprivation of Plaintiffs' Right to Property Without Due Process of Law, 2) Interference with the Exercise or Enjoyment of Civil Rights, and 3) Trespass to Land Used or Intended to be Used to Raise Livestock. (Doc. 1 ¶¶ 22–44.) Plaintiffs allege that as a result of the above-described incident, Defendants violated Plaintiffs' due process rights by unlawfully demanding Plaintiffs permit PVCC to cross Plaintiffs' property through a locked gate after Plaintiffs represented to Deputy Torres that there were other, less disruptive routes for PVCC to access the Canal on Plaintiffs' property. (Doc. 1 ¶¶ 15–26.) Additionally, in denying Plaintiffs their right to exclude PVCC and Deputy Torres from entering their property through the locked gate, Plaintiffs allege Defendants interfered with Plaintiffs' constitutional rights by "threat, intimidation or coercion." (Doc. 1 ¶¶ 30–33.) Plaintiffs further allege Deputy Torres trespassed on Plaintiffs' property when he entered Plaintiffs' property and escorted PVCC to the Canal through the locked gate. (Doc. 1 ¶¶ 39–40.)

On October 15, 2018, Defendants filed the instant motion for summary judgment and noticed the motion for hearing on December 5, 2018. (Doc. 16.) On that same date, Plaintiffs also filed a motion to amend the complaint and noticed the motion for hearing on December 5, 2018. (Doc. 17.) Following a telephonic conference, the Court set a briefing schedule for Plaintiffs' motion to amend the complaint and vacated the hearing on Defendants' motion for summary judgment in light of Plaintiffs' pending motion to amend the complaint. (Doc. 19 at 2.)

The Court denied the motion to amend on November 30, 2018, and set the hearing on the instant motion for March 6, 2019. (Doc. 24.) Following the hearing, the Court stayed this case pending the resolution of *Dilday v. Jones*, which was finalized on May 1, 2023, when the United States Supreme Court denied Plaintiffs' petition for certiorari (*see* Docs. 30, 50, 57). *See Dilday*

*v. Jones*, No. F077682, 2022 WL 108617, at *1, 6 (Cal. Ct. App. Jan. 12, 2022), *review denied* (Apr. 20, 2022), *cert. denied sub nom. Bi Rite Auto Transp. v. Dilday*, No. 22-752, 2023 WL 3158368 (U.S. May 1, 2023).  The matter was thereafter taken under submission on May 19, 2023. (Doc. 58.)

### III.   LEGAL STANDARD

Summary judgment/adjudication is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the case under the applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.*  (internal quotation marks and citation omitted).

The party seeking summary judgment/adjudication "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment/adjudication is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Id*.  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

7

"[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In resolving a summary judgment/adjudication motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## IV.     DISCUSSION

**A.     Federal Claims**

   1.     <u>Deputy Torres</u>

Deputy Torres contends that summary judgment is warranted in this case because he is entitled to qualified immunity under federal law.[5]

   *a.     Relevant law*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

---

[5] Defendants' motion refers repeatedly to the allegations of the complaint. (*See* Doc. 16-1 at 15.) "It is well settled that the sufficiency of the allegations in a complaint do not determine motions for summary judgment." *Dreisbach v. Murphy*, 658 F.2d 720, 729 n.9 (9th Cir. 1981). Consequently, the Court analyzes whether the evidence Plaintiffs have adduced is sufficient to defeat Defendants' motion.

8

perform their duties reasonably." *Id*. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id*. (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

"Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id*. at 232. "Officials must have 'fair warning' that their actions are unconstitutional." *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). In other words, a "public official is entitled to qualified immunity unless (1) 'the facts . . . show that the official's conduct violated a constitutional right;' and (2) the right at issue 'was clearly established 'in light of the specific context of the case' at the time of the alleged misconduct.'" *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012) (quoting *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011)). Courts have discretion to decide the order in which to assess these two prongs of the qualified immunity analysis. *Pearson*, 555 U.S. at 236.

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) ("Whether qualified immunity applies thus 'turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"). Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 580 U.S. 73 (2017)). The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id*. (quoting C*ity & Cty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015)). "[I]f officers of reasonable competence could disagree on [the] issue, [qualified] immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In analyzing qualified immunity at the summary judgment stage, the court "resolve[s] all

9

factual disputes in favor of the party asserting the injury." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013); *see also Chappell*, 706 F.3d at 1057.

        b.      *Analysis*

Plaintiffs claim that Deputy Torres interfered with their right under the due process clause of the Fourteenth Amendment to exclude Deputy Torres and PVCC from Plaintiffs' property by demanding that he unlock the gate that permitted access to the pasture portion of the property.[6] (Doc. 1. ¶¶ 24, 26.) An individual's right to exclude others from their property is the "hallmark of a protected property interest" under the due process clause of the Fourteenth Amendment.[7] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999). It is "one of the most essential sticks in the bundle of rights that are commonly characterized as property." *Id.* (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)). *See also Madison v. Graham*, 316 F.3d 867, 870 (9th Cir. 2002) ("The United States Supreme Court has declared that the right of landowners to exclude others from their property represents 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'") (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433 (1982)).

The "right to exclude" is not absolute. *See, e.g., PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82 (1980). In Plaintiffs' case, it is limited by the 2013 Judgment, which permits PVCC to access Plaintiffs' property at Gates A, B, C, and D to maintain, service, and repair the Canal. (Doc. 16-6 at 10; Doc. 27-1 at 11.) According to Plaintiffs, Gate C was unlocked at the time Deputy Torres sought entry to the property and Deputy Torres was so informed. (Doc. 27-1 at 5, 6, 7; Doc.

---

[6] Defendants' briefing makes arguments directed to the to the Fourth and Fifth Amendments. (*See* Doc. 16-1 at 14.) Plaintiffs do not respond to these arguments, and their complaint makes clear that the basis for their Section 1983 claim is the Fourteenth Amendment. (*See* Doc. 1 ¶¶ 26–27.)

[7] Plaintiffs also assert that this right "is protected under settled California law." (Doc. 27 at 6 (citing *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 258 (2017).) The Ninth Circuit, however, recognizes that "[w]hether the [defendants] violated a state law . . . is not the focus of our [qualified immunity] inquiry." *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001)). Rather, to determine whether an official is eligible for qualified immunity, the Ninth Circuit focuses on "whether a reasonable [official] would have known that the [defendants'] conduct violated [plaintiff's] *federal* . . . constitutional rights rather than merely a state law or policy provision." *Id.* (emphasis added) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also, Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.").

27-2 at 2.) Defendants contend Gate C was locked. (Doc. 16-5 at 2; Doc. 16-6 at 3.)

The status of Gate C, and Deputy Torres' awareness of it, are disputed issues of material fact precluding summary judgment. Granting summary judgment on the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Here, under Plaintiffs' version of events, no reasonable officer could believe that coercing Plaintiff Jones to permit access by that officer and PVCC to Plaintiffs' property through a gate that is <u>not</u> <u>specified</u> in the 2013 Judgment (the Adjacent Gate), when that officer is aware that a gate that is <u>expressly</u> <u>authorized</u> by the Judgment (Gate C) is unlocked and available for entry, would not violate Plaintiffs' clearly established Fourteenth Amendment right to exclude others from their property.[8]

If a "genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018) While resolution of the factual issues may well relieve Deputy Torres of any liability in this case, a reasonable jury could conclude that Deputy Torres violated Plaintiffs' constitutional right to exclude others from their property if Plaintiffs' version of the facts were to prevail at trial. Deputy Torres is therefore not entitled to summary judgment on grounds of qualified immunity.[9]

2. <u>County of Tulare</u>

Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability. *Monell v. Dep't of Soc.*

---

[8] The fact that the state court later found that a prior entry by PVCC through an area not expressly authorized in the 2013 Judgment did not constitute a trespass under California law (*see, e.g.*, Doc. 47 at 6–7) does not bear on the issue of reasonableness, as it is "judged against the backdrop of the law ***at the time of the conduct***." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (emphasis added); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013)

[9] As stated above, Plaintiffs assert their claims against Deputy Torres individually and in his capacity as Deputy Sheriff. (Doc. 1 at 1.) The Eleventh Amendment bars Section 1983 suits against a State unless the state has waived its sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). A suit against a state official in their official capacity is treated as a suit against the State and is barred by the Eleventh Amendment. *Id.* at 71. However, suits against state officials in their official capacities seeking injunctive relief are not treated as against the State and thus are not barred. *Id.* at 71 n.10. Because the State has not consented to the suit, Plaintiffs' claims against Deputy Torres in his official capacity seeking money damages are barred by the Eleventh Amendment and must be dismissed. Plaintiff's claims seeking money damages against Deputy Torres in his individual capacity remain to be adjudicated, as does Plaintiff's request for injunctive relief against defendant in his individual and official capacities.

*Servs.*, 436 U.S. 658, 691 (1978). Instead, plaintiffs must establish that "the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation [they] suffered.'" *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (quoting *Galen v. City of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007)).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Thompson v. Los Angeles*, 885 F.2d 1439, 1443-1444 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), *overruled on other grounds by Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010).

Defendant County of Tulare (the "County") asserts, "Plaintiffs allege liability . . . presumably by claiming that the [County or Sheriff] has a policy of encouraging and permitting warrantless entries onto property without a reasonable belief their actions were lawful. The allegation has no merit and [Plaintiffs] have no evidence to support the allegation." (Doc. 16-1 at 18.) Defendants further assert, "There is no evidence of a policy or custom giving rise to [Plaintiffs'] claims, let alone promulgated by Sheriff [Boudreaux]. Sheriff [Boudreaux] took no official or other action to support a [S]ection 1983 claim against him. (*Id*. at 19.)

As set forth above, there is a triable issue of fact as to whether Deputy Torres violated Plaintiffs' constitutional right to exclude him and PVCC from Plaintiffs' property. Plaintiffs have also adduced evidence that Deputy Torres told Plaintiff Jones that that he was "acting in accordance with and in furtherance of a policy of the Tulare County Sheriff's Department that he did not need a warrant to enter the property or allow anyone else to enter the property if he saw fit to interpret the [2013 Judgment] as he was interpreting it." (Doc. 27-1 at 8.) Taking the evidence in the light most favorable to the non-movant Plaintiffs, there is a triable issue of fact as to whether Deputy Torres's conduct was the result of a policy of the County. Accordingly, summary judgment will be denied as to Plaintiffs' claims against the County.

3. Sheriff Boudreaux

As set forth above, Plaintiff has sued Tulare County Sheriff Michael Boudreaux in his official capacity and the County of Tulare itself. (Doc. 1 at 1.) In a Section 1983 case, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, (1985). In fact, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167 n. 14. Given that an official capacity claim is treated as a claim against the local governmental entity, when a plaintiff sues an officer of a local governmental entity in his official capacity and also sues the local entity itself, the official capacity claim is redundant of the claim against the entity and the official capacity claim can be dismissed. *See Center For Bio–Ethical Reform, Inc. v. L.A. County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1206 (E.D. Cal. 2008); *Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997).

As the official capacity claims against Sheriff Boudreaux are redundant of the claims against the County, summary judgment will be granted on the claims against Sheriff Boudreaux in his official capacity.

**B.   State Law Claims**

Plaintiffs plead two claims against Defendants under California law: "interference with the exercise of enjoyment of civil rights," presumably under the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 (the "Bane Act")[10], and "trespass to land used or intended to be used to raise livestock." (Doc. 1 ¶¶ 30–44.) Defendants contend they are entitled to summary judgment on these claims because they are entitled to immunity under Cal. Gov't Code §§ 820.2 and 821.8. (Doc. 16-1 at 19–21.)

---

[10] The Bane Act provides in relevant part:

> Whenever a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Cal. Civ. Code § 52.1(a).

1. <u>Deputy Torres</u>

    *a.     Relevant law*

"[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2 ("Section 820.2"). "[I]nstead of interpreting 'discretionary' literally, the focus should be on the policy considerations underlying the governmental entity's claim of immunity." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160-61 (9th Cir. 2019). Specifically, discretionary functions are those that involve "basic policy decisions which have been expressly committed to coordinate branches of government." *Id.* at 1161 (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995)). "On the other hand, there is no basis for immunizing lower level decisions that merely implement a basic policy already formulated." *Garcia v. City of Los Angeles*, 611 F. Supp. 3d 918, 936 (C.D. Cal. 2020) (quoting *Barner v. Leeds*, 24 Cal. 4th 676, 685 (2000)).

Defendants rely on *Watts v. County of Sacramento*, 136 Cal. App. 3d 232 (1982), in contending that Section 820.2 applies to them. In *Watts*, the plaintiffs entered into an agreement with a landowner to grow and harvest crops on the latter's land. When the plaintiffs arrived to harvest their crop, the owner ordered them off the property. *Watts*, 136 Cal. App.3d. at 234. In the ensuing disagreement, the owner called the sheriff's department and informed them that he was the owner and the plaintiffs had no legal right to be on the property. The officers instructed the plaintiffs to leave, which they did, and the owner later converted the crops to his own use. (*Id.*) The plaintiffs sought damages for "unlawful interference with [plaintiffs'] economic or business opportunity." (*Id.*)

The court found the claim barred pursuant to Section 820.2. It reasoned: "A decision to arrest, or to take some protective action less drastic than arrest, is an exercise of discretion for which a peace officer may not be held liable in tort. Settling a disagreement as to plaintiffs' right to be on the land by ordering them to leave is clearly action short of arrest for which the officers are immune from liability." *Watts*, supra, 136 Cal. App. 3d. at 234 (internal citations and quotation marks omitted). The plaintiffs argued that the officers were liable for their failure to investigate

whether the plaintiffs had a legal right to be on the property. *Id.* at 235. The court disagreed, finding that the officers' determination of how to handle the dispute was discretionary: "In order to settle the dispute the officers were obliged to exercise their discretion after they had observed what was happening and had listened to the explanation of those present . . . Such intrusions are . . . a regular and necessary part of police work conducted for the preservation of public safety and order, and the decision to use this official authority on any particular occasion ***is peculiarly a matter of judgment and discretion*** for which the officers (and defendant) may not be held liable in tort." *Id.* (internal citations and quotation marks omitted) (emphasis in original).

                b.       *Analysis*

As in *Watts*, once Deputy Torres made the decision to become involved in the ongoing dispute between PVCC and Plaintiffs regarding PVCC's access to the Canal—as he could hardly fail to do given the potential for a breach of the peace—he was "obliged to exercise [his] discretion after [he] had observed what was happening and had listened to the explanation of those present." 136 Cal. App. 3d at 235.

Plaintiffs assert that *Watts* is inapplicable because the 2013 Judgment "did not leave open any discretion in choosing the route to the Canal across [Plaintiffs'] property" (Doc. 27 at 12), but this argument misses the mark. The relevant question is not whether the terms of the 2013 Judgment afforded Deputy Torres any discretion, but rather whether Deputy Torres' decision of whether and how to enforce the terms of Judgment—albeit in a way with which Plaintiffs disagree—was discretionary. Plaintiffs' version of the events supports the determination that Deputy Torres acted discretionarily. According to Plaintiffs, after speaking with both Mr. Van Waller and Plaintiff Jones and reviewing the 2013 Judgment, Deputy Torres made a series of decisions to enforce the Judgment by coercing Plaintiff Jones to permit access to his property through a gate not specified in the Judgment, instead of accessing the property through an authorized gate, Gate C. (*See* Doc. 27-1 at 5, 6, 7; Doc. 27-2 at 2. *See also* Doc. 27 at 11 ("Torres identifies a route that was open and available to PVCC whereby it could access its Canal across [Plaintiffs'] property through a 'cowboy gate,' but ***decided*** that using that route would present a potential of damage to PVCC's vehicles.) (emphasis added).) In making these decisions, Deputy

Torres had to exercise his discretion in determining the course of action to take; there was no preset course of action which he simply followed.

Accordingly, Deputy Torres' actions having been discretionary, he is entitled to immunity from liability under state law for those actions. *Johnson v. State of California*, 69 Cal. 2d 782, 793 (1968); Cal. Gov't Code § 820.2.

### 2. County of Tulare and Sheriff Boudreaux

Having found Deputy Torres immune under Section 820.2, the County, as his employer, is likewise immune. *See Watts*, 136 Cal. App. 3d 232, 234–35 ("And, since the officers are immune from liability for their performance of a discretionary act, defendant County of Sacramento, as the officer's employer, is likewise immune.") (citing Cal. Gov't Code § 815.2(b)). *See also Goehring v. Wright*, 858 F. Supp. 989, 1002 (N.D. Cal. 1994).

Sheriff Boudreaux, in his official capacity, is entitled to governmental immunity from liability for Plaintiffs' interference claim under the Bane Act to the same extent and for the same reasons as the County. *See Mundo v. McMahon*, No. ED CV 15-2511-AB (PLA), 2016 WL 8732349, at *8 (C.D. Cal. Sept. 6, 2016) (collecting cases holding, with respect to a Bane Act claim, that state law imposes liability on counties under the doctrine of respondeat superior). As for Plaintiffs' trespass claim, it is a claim attempting to hold Sheriff Boudreaux directly liable even though he was not personally involved in the alleged trespass by Deputy Torres. (*See* Doc. 1 ¶¶ 39–44.) In the absence of a statutory basis for such tort liability, which Plaintiffs have not provided, their trespass claim against Sheriff Boudreaux fails.[11] *See Wade v. Cnty. of Sacramento*, No. CIV S-04-1711-GEB-DAD (P), 2008 WL 4104312, at *6 (E.D. Cal. Sept. 3, 2008) (finding public entity immunity under Cal. Gov't Code § 815(a) applies to tort claims brought against sheriff in his official capacity)(citing *Munoz v. City of Union City*, 120 Cal. App .4th 1077, 1111–13 (2004)). *See also Manning v. City of Rohnert Park*, No. C 06-03435 SBA, 2006 WL 3591149, at *8 (N.D. Cal. Dec. 11, 2006); *Megargee ex rel. Lopez v. Wittman*, No. CV F 06-0684-AWI-LJO, 2006 WL 2988945, at *10 & n.2 (E.D. Cal. Oct. 17, 2006).

---

[11] Because the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' state law claims, it does not address Defendants' additional argument of immunity under Cal. Gov't Code § 821.8.

## C.  Punitive Damages

Defendants assert that punitive damages are inappropriate as a matter of law in this case. (Doc. 16-1 at 22.)

Plaintiffs may not seek punitive damages against the County for alleged violations of his constitutional rights under Section 1983. *See City of Newport*, 453 U.S. at 271 (holding that municipalities are immune from punitive damages in § 1983 action); *Cook County, Ill. v. United States, ex rel. Chandler*, 538 U.S. 119, 129 (2003) (no punitive damages are allowed against a municipality unless expressly authorized by statute); *Mitchell v. Dupnik*, 75 F.3d 517, 526 (9th Cir. 1996); *Davis v. Sacramento County Sheriff's Dept.*, No. CIV S-07-0674 LKK EFB (P), 2008 WL 540614, at *2 (E.D. Cal. Feb.25, 2008) (granting motion to strike plaintiff's demand for punitive damages because Congress has not abrogated the immunity of municipalities from punitive damages and no California law waives that immunity).

While punitive damages in a Section 1983 case are not available against government entities or officials acting in their official capacities, they may be awarded against officials in their individual capacities. *See Wells v. Bd. of Trustees of California State Univ.*, 393 F. Supp. 2d 990, 999 (N.D. Cal. 2005). Punitive damages are appropriate where an individual's conduct is shown to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). In support of their claim that punitive damages are unwarranted, Defendants state only that Plaintiffs' "fail to allege any conduct on behalf of Deputy Torres was motivated by evil motive or intent." (Doc. 16-1 at 22.) As noted above, the sufficiency of Plaintiffs' allegations in their complaint is not the subject of a motion for summary judgment. *See* n.5, *supra*. In any event, Plaintiffs do allege that Deputy Torres acted in "reckless disregard" of their rights (Doc. 1 ¶ 44), and, at a minimum, have proffered evidence that, taken as true, would show Deputy Torres ignored the fact that Gate C, a gate expressly authorized by the 2013 Judgment, was unlocked and accessible, and instead coerced Plaintiff Jones, by threat of incarceration, to provide a key to a non-authorized gate so that he and PVCC could enter Plaintiffs' property. A reasonable jury considering these facts could find a "reckless indifference" to Plaintiffs' constitutionally-property right, such that punitive damages

would be warranted.

## V. CONCLUSION AND ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment or, in the alternative, partial summary judgment (Doc. 16) is granted in part and denied in part, as follows:

1. Defendants' motion is GRANTED as to Plaintiffs' Fourteenth Amendment claim against Sheriff Boudreaux;

2. Defendants' motion is GRANTED as to Plaintiffs' Fourteenth Amendment claim against Deputy Torres in his official capacity;

3. Defendants' motion is GRANTED as to Plaintiffs' state law claims for interference with the exercise or enjoyment of civil rights and trespass to land;

4. Defendants' motion is DENIED in all other respects;

5. The Court hereby SETS a Settlement Conference on September 6, 2023, at 1:00 p.m. before Magistrate Judge Erica P. Grosjean. An Order re Settlement Conference will follow.

6. The Pretrial Conference is SET for October 11, 2023, at 2:30 p.m. in Courtroom 7 before the Honorable Sheila K. Oberto, United States Magistrate Judge. The parties are ORDERED to file a Joint Pretrial Statement pursuant to E.D. Cal. Local Rules 281(a)(2) and 282. The parties are further directed to submit a digital copy of their Pretrial Statement in Word format, directly to Judge Oberto's chambers by email at SKOorders@caed.uscourts.gov.

7. Trial is SET for December 12, 2023, at 8:30 a.m. in Courtroom 7 before the Honorable Sheila K. Oberto, United States Magistrate Judge. Counsel's attention is directed to E.D. Cal. Local Rule 285.

IT IS SO ORDERED.

Dated: **June 16, 2023**     /s/ *Sheila K. Oberto*
                              UNITED STATES MAGISTRATE JUDGE